Filed 3/12/13  In re C.B. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

| | |
|---|---|
| In re C.B., a Person Coming Under the Juvenile Court Law. | |
| AMADOR COUNTY HEALTH AND HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CHRISTOPHER D., <br><br> Defendant and Appellant. | C070741 <br><br> (Super. Ct. No. 11-DP-0399) |

Appellant Christopher D., father of the minor, appeals from the juvenile court's dispositional orders removing the minor from his custody and placing him with mother. (Welf. & Inst. Code, § 395.)[1]  Father contends there was insufficient evidence to support jurisdiction over the minor.  We shall affirm.

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

1

BACKGROUND

Prior to October 2011, father had custody of his seven-year-old son on weekends -- scheduled to pick the minor up from school on Fridays and bring him back to school on Mondays. On December 1, 2011, however, weekend visitation was suspended by the family law court, after mother filed a declaration seeking reduction in visitation and requesting visitation be conditioned upon father's participation in a rehabilitation program.

Mother's declaration stated that father had participated in a 30-day rehabilitation program in March 2010, but had returned to alcohol use immediately thereafter. Father was admittedly continuing to drink, and the minor also reported father was drinking, despite the court order that father not consume alcohol 12 hours prior to or during visitation. The minor also reported that, in April 2011, father had vomited from drinking too much and the dog ate the vomit and got drunk. The minor also stated that he and father were fishing and there was lots of beer.

Father had been missing an average of one visit per month, and had been picking the minor up a day late or returning him a day early. The minor frequently ended up spending the night with his aunt, instead of father.

The minor returned from visits not having bathed, not having brushed his teeth, and hungry. The minor would spend a day overeating after returning to mother, although father claimed he had offered the child food. Mother also stated the minor would return from visits with bug bites on his back and blisters on his feet from not wearing shoes. The minor told mother in April 2011 that he and father had slept in the car.

On October 15, 2010, father brought the minor to the maternal grandmother's house, reporting that the minor did not want to stay with him. Father told the maternal grandmother that his drinking had been getting worse and he felt he was unfit as a parent, as "broken" people cannot make good parents. Mother's declaration further recounted father's talk of suicide.

2

Finally, mother's declaration described an incident reported by the minor wherein the minor claimed father had gotten very angry when his dog defecated on the couch. According to the minor, father put the dog's head in the pile of feces while beating the dog, then put the dog's head in the toilet and flushed it. He then put the dog in the toilet, closed the lid, and sat on the lid while the dog screamed. When mother confronted father about the incident, he laughed.

On November 30, 2011, the Amador County Health and Human Services Agency (Agency) filed a section 300 petition on behalf of the then eight-year-old minor to remove him from father's custody. The petition, as subsequently amended, alleged the minor came within section 300, subdivisions (b) (failure to protect), (c) (serious emotional damage), and (i) (cruelty). Specifically, it alleged, under subdivision (b), that the minor has suffered, or there is substantial risk he will suffer, serious physical harm or illness, by the inability of the parent to provide regular care for the child due to the parent's mental illness, developmental disability, or substance abuse. In support of this allegation, it was alleged that, on November 29, 2011, father admitted he is an alcoholic and that he has continued to consume alcohol in the presence of the minor, despite being prohibited by a family court order from doing so. Mother reported that the reason for the family court order was her previous report that father had driven under the influence of alcohol with the minor in the car in the past.

Under section 300, subdivision (c), the petition alleged the minor was suffering from serious emotional damage as a result of the parent's conduct. Mother reported the minor suffered from depression and anxiety, and had developed anger management issues after he witnessed the incident wherein father beat the dog and put it in the toilet. The minor has since had repeated angry outbursts and tantrums, which had also caused him to get in trouble at school. The petition also alleged that the minor has stated he does not feel safe in father's home. Additionally, it was alleged that father had reported he has suicidal thoughts several times a day, although he states he would not commit suicide

3

"because that would be stupid." Father, however, has two known suicide attempts, documented by the police department, and states he suffers from depression and post traumatic stress disorder for which he is not receiving treatment.

Under section 300, subdivision (i), the petition alleged the minor had been subjected to acts of cruelty by the parent, and recounted the incident wherein father beat the dog and put it in the toilet. The minor had also reported that the dog had thereafter disappeared and father had told him the dog ran away. The minor appeared doubtful of father's explanation, stating the dog could barely walk. The petition also alleged that mother reported father had taken the minor for visitation and shot sheep for sport in Amador County in the minor's presence.

Mother's statements, from which the allegations in the petition arose, were included in the jurisdiction report. The social worker also spoke with the minor, who stated that he does not feel safe at father's house because father is always yelling. Father and his roommate drink beer when he is there. The minor became very serious and visibly upset when he recounted the incident involving the dog and the toilet.

Father told the social worker that the dog had an accident so he picked the dog up and held it over the toilet so it could defecate in the toilet. He then put the dog in the shower. He denied putting the dog in the toilet and claimed the dog did, later, run away after his roommate left the doors and windows open. Father admitted he is an alcoholic but says he can control his drinking. Father also admitted he has had a drink in the minor's presence but said he does not get drunk while caring for the minor. He stated he gets drunk about three times a month. Father also reported he suffers from depression and post traumatic stress disorder.

After a hearing, at which both mother and father testified, the juvenile court sustained the allegations in section 300, subdivisions (b) and (c), but dismissed the subdivision (i) allegations. With respect to the subdivision (i) allegations, the juvenile court remarked that it was possible the minor was traumatized by the dog's yelling and

4

yapping, and by seeing father put the dog over the toilet -- although the minor did say father sat on the lid to keep the dog from being able to get out of the toilet. The court then went on to say, "On the other hand, I don't know where he comes up with this sheep business, either. [¶] It's troubling. I think that I'm not going to find it to be true, but I find the way the whole thing was handled, again, to be extremely troubling."

At the disposition hearing, the juvenile court ordered the minor placed with mother. Father's case plan included a mental health assessment and psychological evaluation, a medication evaluation, weekly therapy, a parenting class, a substance abuse assessment, substance abuse testing, and weekly supervised visits with the minor.

Father filed a timely notice of appeal. Subsequently, at the six-month review hearing, the juvenile court entered orders granting sole physical custody of the minor to the minor's mother, granting father supervised visitation, and terminating jurisdiction.[2]

DISCUSSION

I

First, we address the Agency's request that we "decline to take this matter under submission on jurisdiction" because the issue raised is not encompassed in the notice of appeal. Specifically, father challenges the jurisdictional findings but mentioned only the disposition hearing and orders in his notice of appeal. We reject the Agency's request and liberally construe father's notice of appeal to encompass the jurisdictional findings and orders.

"The notice of appeal must be liberally construed." (Cal. Rules of Court, rule 8.100(a)(2).) "[A]n appeal will not be dismissed because of a misdescription of the judgment or order to which it relates, unless it appears that the respondent has been

_____

[2] This court granted the Agency's request for judicial notice of the juvenile court's orders entered at the six-month review hearing in an order dated September 27, 2012.

5

misled by such misdescription." (*Girard v. Monrovia City School Dist.* (1953) 121 Cal.App.2d 737, 739.)

Jurisdictional findings, such as those challenged here, are interlocutory and not independently appealable. (*In re Athena P.* (2002) 103 Cal.App.4th 617, 624.) Thus, the jurisdictional findings can be challenged on appeal only from the next appealable order -- here, the disposition from which father appealed. (*In re Tracy Z.* (1987) 195 Cal.App.3d 107, 112.) We perceive no injustice in construing father's notice of appeal to incorporate the jurisdictional findings. Nor does father's trial counsel's failure to check the "jurisdictional findings" box on the notice of appeal form (Judicial Council Forms, form JV-800) rise to the level of "clear and satisfactory" evidence that father, who was served with a copy of the opening brief, has not authorized his appellate counsel to raise challenges to the jurisdictional findings in this appeal. (*Seeley v. Seymour* (1987) 190 Cal.App.3d 844, 853.)

II

Next, we address the Agency's contention that we should dismiss this appeal as moot. We also decline this request.

As we recited, at the six-month review hearing held after father took this appeal, the juvenile court entered orders granting sole physical custody of the minor to the minor's mother, granting father supervised visitation, and terminating jurisdiction. As a general rule, an order terminating juvenile jurisdiction renders an appeal from a previous dependency order moot. (*In re Michelle M.* (1992) 8 Cal.App.4th 326, 330.) "However, where a judgment dismissing the dependency action is challenged on appeal[,] the case 'is not moot *if* the purported error is of such magnitude as to infect the outcome of [subsequent proceedings] *or* where the alleged defect undermines the juvenile court's initial jurisdictional finding. Consequently the question of mootness must be decided on a case-by-case basis.' [Citation.]" (*In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1547.)

6

Accordingly, an appeal of the findings upon which continuing orders for custody and visitation are based, such as the one here, will generally not be dismissed as moot because an error in those findings undermines the foundation for such continuing orders. (*In re Joshua C.*, *supra*, 24 Cal.App.4th at p. 1548.)  For this reason, and because the appeal challenges the basis for the juvenile court's initial jurisdiction, we shall not dismiss the appeal as moot.

III

Moving to the merits, father contends the evidence is insufficient to support the juvenile court's findings of jurisdiction over the minor pursuant to subdivisions (b) or (c) of section 300.  With respect to subdivision (b), according to father, even assuming he has mental health issues and was continuing to use alcohol, the record does not establish those problems resulted in a risk of harm to the minor.  We disagree.

Section 300, subdivision (b), provides that a child comes within the jurisdiction of the juvenile court if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

The purpose of the dependency statutes is to keep children safe from harm or from the current risk of harm inflicted through neglect or abuse.  (§§ 202, 300.2; *In re Rocco M.,* (1991) 1 Cal.App.4th 814, 824.)  The Legislature has recognized: "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child."  (§ 300.2.)  A parent who has a history of substance abuse and continues to abuse alcohol, exposing a child in his custody to the negative effects of such abuse, has placed the child at substantial risk of suffering serious harm.

7

Here, the minor reported father and his roommate drank alcohol when he was there and that father yelled at him a lot. The minor observed father vomit from drinking too much and then letting the dog eat the vomit. The minor would return from weekends with father hungry and dirty, and reporting that father did not feed him. The minor would also return from weekends with the father with bug bites and blisters. The minor would also report, after each weekend, that father had been drinking beer during the visit. The minor stated he does not feel safe at father's house. Father rarely cared for the minor for the entire weekend, returning him to mother before Monday morning and/or leaving him with the minor's aunt. On days father did bring the minor to school on Monday, the minor was usually late for school.

Contrary to father's assertion on appeal, there was evidence suggesting these behaviors and failures were the result of his alcohol abuse. The maternal grandmother reported that father had brought the minor to her to care for on at least one occasion, stating his drinking had worsened and he believed he was unfit as a parent. Thus, father, himself, has indicated that his drinking affects his ability to adequately parent the minor.

Father's reliance on *In re B.T.* (2011) 193 Cal.App.4th 685 for the proposition that jurisdiction cannot be based on his alcohol abuse is misplaced. Unlike father here, in that case, the mother "regularly" drank beer but there was no evidence that her drinking rendered her incapable of taking care of her children or caused her to neglect or endanger them in any way. (*Id.* at pp. 689, 693.) Additionally, the mother had tested clean 11 times three months before trial, suggesting she was not in the grip of a serious addiction, and family members had stated that her beer use had no effect on her behavior. (*Id.* at p. 694)

The instant case, however, is not one where the negative effects of a parent's use of alcohol on the minor are speculative. The record here supports a finding that father

had failed to provide adequately for the minor and that this failure was due, at least in part, to his abuse of alcohol.[3]

Because the evidence was sufficient to establish jurisdiction pursuant to section 300, subdivision (b), we need not address father's arguments concerning the subdivision (c) allegations that his actions caused the minor to suffer, or placed the minor at risk of suffering, severe emotional damage. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

DISPOSITION

The judgment is affirmed.


                                                   BLEASE             , Acting P. J.


We concur:


        HULL              , J.


        MAURO           , J.

---

[3] To the extent father's failure to provide adequately for the minor was also due, in part, to his unresolved and untreated mental health issues, this does not change the result. (See § 300, subd. (b).)